## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF VIRGINIA
## NORFOLK DIVISION

| | |
|---|---|
| **KATHRYN CROCKER,** | |
| PLAINTIFF | Civil Action No.___ 2:18cv87_____ |
| v. | COMPLAINT FOR DAMAGES: |
| **HAMPTON ROADS REGIONAL JAIL AUTHORITY,** | (42 U.S.C § 1983) |
| **ROBERT J. McCABE,** | JURY TRIAL DEMANDED |
| and | |
| **LINDA K. BRYANT,** | |
| DEFENDANTS. | |

Plaintiff Kathryn ("Kathy") Crocker brings this Complaint against Defendants Hampton Roads Regional Jail Authority, Robert J. McCabe, and Linda K. Bryant for damages arising out of Defendants' violation of Ms. Crocker's constitutional rights. This violation occurred when Defendants deprived Ms. Crocker of her right to her employment without giving her notice of the charges against her and an opportunity to respond, in violation of her constitutionally-protected right to Due Process. In support thereof, Plaintiff alleges as follows:

### PRELIMINARY STATEMENT

1.      Plaintiff Kathy Crocker worked as the Human Resources Manager for Defendant Hampton Roads Regional Jail Authority ("HRRJA") at the Hampton Roads Regional Jail (the "Jail") in Portsmouth, Virginia for over five years. She was never counseled regarding any issues with her performance until Defendants Robert McCabe and Linda Bryant were appointed Interim Superintendent of the Jail and Assistant Superintendent, respectively, in the fall of 2016. Within

two weeks of Bryant's arrival at the Jail, she issued Ms. Crocker a verbal warning, claiming Ms. Crocker had mishandled an investigation that was conducted several months prior. Bryant terminated Ms. Crocker's employment the following week, under the direction and supervision of McCabe.

2.      The way in which Defendants terminated Ms. Crocker's employment violated her Constitutional right to Due Process, and thus forms the basis of her Complaint. Bryant called Ms. Crocker into a meeting at the end of the workday and accused her of mishandling a sexual harassment investigation that predated Bryant's tenure as the Assistant Superintendent. Bryant stated that Ms. Crocker's employment was being terminated, effective immediately, as a result of this alleged misconduct. Bryant then gave Ms. Crocker the option to resign in lieu of termination, but she required Ms. Crocker to make a decision immediately, without seeing any written account of the charges against her or supporting evidence. Believing that she had no alternative, Ms. Crocker signed the letter of resignation that Bryant had prepared for that very purpose. She is now suing Bryant, McCabe, and the HRRJA for Defendants' reckless act of terminating her employment in this manner, as their actions displayed a callous disregard of Ms. Crocker's federally protected rights.

## PARTIES

3.      Plaintiff Kathy Crocker is a natural person and a citizen of the United States, domiciled in the Commonwealth of Virginia. At all times relevant to this matter, Ms. Crocker was employed by the HRRJA and she worked at the Jail, located in Portsmouth, Virginia, as a Human Resources Manager.

4.      Defendant Hampton Roads Regional Jail Authority ("HRRJA" or the "Jail") is a regional jail authority created by the cities of Chesapeake, Hampton, Newport News, Norfolk,

and Portsmouth, Virginia, pursuant to Va. Code §§ 53.1-95.2 *et seq.* to manage the Jail. The Jail

serves the five participating jurisdictions. On its website, it is stated that the Jail "is operated

under the direction of the Hampton Roads Regional Jail Authority which is comprised of the

sheriffs, city managers and city council members representing their [re]spective jurisdictions."

At all times relevant to this matter, the HRRJA was authorized and empowered to sue and be

sued in its own name, plead and be impleaded, under Va. Code § 53.1-95.7 (11). Furthermore,

Va. Code. § 53.1-95.7 (3) vests in the HRRJA the power "[t]o appoint, select, and employ

officers, agents, and employees therefor, including a superintendent of the regional correctional

facility and necessary jail officers and employees therefor.. and to fix their respective

compensations[.]" Accordingly, HRRJA was the employer of Plaintiff Crocker and Defendants

Bryant and McCabe.

    5.  Defendant Robert J. McCabe ("McCabe") is a natural person and citizen of the

United States, domiciled in the Commonwealth of Virginia. Defendant McCabe was appointed

Interim Superintendent of the Jail by HRRJA effective September 12, 2016. As such, from that

time on, and at all times relevant to the allegations in this claim, Defendant McCabe was an

employee, agent, and/or servant of Defendant HRRJA, and was acting within the course and

scope of his employment and/or agency with Defendant HRRJA, and under color of state law.

Importantly to this case, as Interim Superintendent, Defendant McCabe had final policymaking

authority in regard to all personnel matters, and he functioned as the chief executive officer of

the HRRJA. Plaintiff sues Defendant McCabe in his individual capacity.

    6.  Defendant Linda K. Bryant is a natural person and citizen of the United States,

domiciled in the Commonwealth of Virginia. Defendant Bryant was appointed Assistant

Superintendent of the Jail by the HRRJA on or about October 8, 2016. As such, from that time

on, and at all times relevant to the allegations in this claim, Defendant Bryant was an employee, agent, and/or servant of the HRRJA, and was acting within the course and scope of her employment and/or agency with Defendant HRRJA, and under color of state law. Plaintiff sues Defendant Bryant in her individual capacity.

### JURISDICTION AND VENUE

7.      This Court has original jurisdiction over this action pursuant to 28 U.S.C. § 1331, as this case presents a federal question.

8.      Venue is proper in this District under 28 U.S.C. § 1391(b)(2), because all of the acts and omissions giving rise to Plaintiff's claims occurred in this District. Furthermore, venue is proper in the Norfolk Division under Local Rule 3(C), as a substantial part of the events or omissions giving rise to the claims in this case occurred within the City of Portsmouth, Virginia.

### FACTUAL ALLEGATIONS

9.      Kathy Crocker was hired by Defendant Hampton Roads Regional Jail Authority as a Human Resources Manager at the Hampton Roads Regional Jail on August 11, 2011. Ms. Crocker was a highly-effective Human Resources Manager. She received outstanding evaluations for her work performance during the five years she worked at the Jail, and she successfully balanced the Jail's $18 million-dollar personnel budget five years in a row. Furthermore, the Jail enjoyed five years of reprieve from any adverse lawsuits filed by its employees during Ms. Crocker's tenure as HR Manager.

#### Lt. Jones Spreads Rumors that Ms. Crocker is a Racist in Retaliation for her Involvement in Instigating an Internal Affairs Investigation

10.      Beginning in early 2016, several non-white employees at the Jail began to openly question whether Ms. Crocker – the Jail's white HR manager – was racially biased. Upon

information and belief, these false and malicious rumors were originated by Eric Jones, a
lieutenant at the Jail.

11.     In November 2015, while performing her duties as HR Manager, Ms. Crocker
inspected the FMLA paperwork submitted by Lt. Jones and suspected that he had falsified it. In
accordance with internal policies, Ms. Crocker alerted the Jail's then-Superintendent, David
Simons, to the issue, and Simons launched an Internal Affairs investigation into the matter. The
investigation confirmed Ms. Crocker's suspicions that Jones had falsified his paperwork.

12.     Jones did not respond kindly to Ms. Crocker's discovery. Upon learning about the
Internal Affairs investigation, Jones sent an email to Ms. Crocker advising her not to address him
moving forward, as he would consider even a greeting from her to be "harassment." He also filed
an internal charge of harassment against Ms. Crocker, claiming she had "no authority" to
investigate his FMLA paperwork. The combination of these two incidents resulted in
Superintendent Simons issuing Jones a letter directing him to "cease and desist" his harassment
of Ms. Crocker, in accordance with internal Jail policies.

13.     Jones nevertheless persisted in his retaliatory conduct against Ms. Crocker by
circulating allegations to his staff that she is a racist.

14.     Jones also discussed his vendetta against Ms. Crocker with individuals outside the
Jail. During the spring of 2016, Jones informed Christopher Smith, Superintendent of Western
Tidewater Regional Jail, of his belief that Ms. Crocker was "out to get him" because of the
paperwork issue. Mr. Smith instructed Jones to "keep it professional."

15.     By February 2016, comments from Jones's staff about Ms. Crocker being a racist
were "relatively widespread."  Additionally, around that same time, Jones informed a confidante
and fellow manager at the Jail, "I've got Kathy right where I want her."

**Two New Hires Receive Unequal Pay;**
**Jones Circulates More Rumors that Ms. Crocker is Racist**

16.    In March 2016, the Jail hired two new officers, one African American and one

Caucasian. Unlike the Caucasian officer, however, the African American officer's Certification

from the Virginia Department of Criminal Justice (VDCJ) had lapsed. According to the Jail's

internal policies, which had been approved by the Jail's Board during its review of the 2015-

2016 budget, this resulted in the African American officer being compensated beginning at the

trainee rate, while the Caucasian officer's compensation began at the certified rate. The pay scale

in effect at the time had been pre-determined by the Virginia Compensation Board and

augmented by the Jail.

17.    Yet, upon information and belief, Lt. Jones (who was the lieutenant in charge of

training this class of officers) turned the matter into a race issue.  He directed the African

American officer receiving the trainee rate to address the pay disparity with management. Ms.

Crocker met with the employee and explained that she was paying the officer according to Jail

policy based on the officer's lack of certification. However, over the next several months, Ms.

Crocker heard reports from several employees at the Jail that they had heard she was "paying

blacks less than whites." Upon information and belief, these rumors were circulated by Lt. Jones.

**Jail Offers Full-Time Position to White Accountant,**
**Prompting More False Allegations about Ms. Crocker being Racist**

18.    By the late summer of 2016, upon information and belief, Jones's false and

malicious rumors about Ms. Crocker being a racist had begun to be accepted by Jail employees

outside of his staff, and in management-level positions.

19.    In August 2016, the Jail was preparing for its annual audit. At the time, the

Administration Department was employing an accountant on a part-time basis. To assist in the

upcoming audit, the Jail's Administration Manager, Deborah Hand, and Superintendent Simons offered the accountant a full-time position.

20.     At the same time, the Jail was also employing an individual from a temporary staffing agency as a receptionist on a part-time basis. The receptionist was not offered a full-time position by Ms. Hand or Superintendent Simons to assist with the looming audit.

21.     Unfortunately for Ms. Crocker, the accountant is white, and the receptionist is African American. When the decision to offer full-time employment to the accountant was presented at the weekly Superintendent's meeting, several management-level officials immediately inferred that Ms. Crocker and Ms. Hand had made this offer of employment without Superintendent Simons' knowledge or consent and suggested they were showing preferential treatment to the "white girl" in accounting based on her race.

### The Jail Receives Salacious Sexual Harassment Allegations Against a Lieutenant from a Female Subordinate

22.     That same year, the Jail also received salacious allegations from a female officer that her supervisor, Lieutenant "M," was forcing her to engage in intercourse with him on the Jail's premises. The officer's complaint was received by Major Tanya Hatchett, who notified Ms. Crocker and the Jail's head of internal affairs, Sargent Pamela Ellis, in accordance with the Jail's internal policies.

23.     The following morning, Ms. Crocker interviewed the officer about her allegations of sexual harassment against Lieutenant M and contemporaneously typed the information the officer provided, as well as the officer's responses to her questions. After the interview, Ms. Crocker provided the officer a copy of the typed document in accordance with the Jail's policies. The officer reviewed the written statement and signed it. The officer also provided Ms. Crocker copies of text messages from Lt. M. Ms. Crocker then provided the officer's signed statement

and text messages to Sgt. Ellis for her Internal Affairs investigation, as Sgt. Ellis had directed her to do.

24.     Superintendent Simons had a personal policy that harassment complaints must be dealt with promptly. Approximately three days after Ms. Crocker provided the officer's texts and statement to Sgt. Ellis, Simons expressed frustration to Crocker that Internal Affairs had not yet interviewed Lt. M about the officer's sexual harassment complaint.

25.     Shortly thereafter, Superintendent Simons called Lt. M into his office and interviewed him about the sexual harassment allegations, with Capt. Ana Kasey present. Upon information and belief, Superintendent Simons ultimately determined that several of the more salacious allegations against Lt. M could not be substantiated, including the officer's allegation that Lt. M had pressured her to have intercourse with him on the Jail's premises. Simons suspended Lt. M without pay for 15 days and reassigned him to another division, as the officer had requested.

### Superintendent Simons Retires; Defendants McCabe and Bryant
### Appointed as Superintendent and Assistant Superintendent

26.     On or about September 9, 2016, Superintendent Simons retired.

27.     Defendant McCabe was appointed Interim Superintendent effective September 12, 2016, and Defendant Bryant was appointed Assistant Superintendent effective October 8, 2016.

### Defendant Bryant Questions Ms. Crocker
### Regarding the Lieutenant M Investigation

28.     During the second week of October 2016, before Defendant Bryant officially assumed her position as Assistant Superintendent of the Jail, she privately questioned Ms. Crocker regarding the Lieutenant M investigation. Ms. Crocker explained that the matter had

been investigated, and that it was her understanding that Superintendent Simons decided to

suspend Lt. M for 15 days without pay, rather than discharge him, because most of the

allegations could not be substantiated. Bryant responded, "That is sad." Ms. Crocker informed

Bryant that her only involvement in the investigation consisted of interviewing the reporting

officer.

### Bryant Discharges Lieutenant M and Issues Ms. Crocker a Written Warning

29.    About two weeks later, on or about October 20, 2016, Bryant met with Lt. M and

terminated his employment. Upon information and belief, this action was related to the

allegations of sexual harassment the officer made against him before Bryant's arrival.

30.    Later that day, Bryant gave Ms. Crocker a formal verbal counseling regarding her

handling of the Lieutenant M investigation. Ms. Crocker reiterated that she had only taken the

officer's statement. Bryant told Ms. Crocker her actions had "put the company in jeopardy," and

she instructed Ms. Crocker not to contact Defendant McCabe, as he would forward all emails he

received from Ms. Crocker to Bryant. Bryant also told Ms. Crocker she would not have access to

McCabe like she had access to Superintendent Simons.

31.    That evening, Bryant sent a brief email to McCabe, advising him:

| | |
|---|---|
| **From:** | Bryant, Linda L. ███████████ |
| **Sent:** | Thursday, October 20, 2016 7:36 PM |
| **To:** | McCabe, Robert J. |
| **Subject:** | crocker |

Counseling with Crocker done.  Will write it up tomorrow.

Linda L. Bryant
Assistant Superintendent/In-House Counsel
2690 Elmhurst Lane
Portsmouth, Virginia 23701
(757) 488-9464
████████████████

9

A true copy of the email is attached as Exhibit A and made a part hereof.

**Defendant Bryant Terminates Ms. Crocker's Employment
In Violation of her Right to Due Process**

32.     At approximately 4:00 p.m. on Friday, October 28, 2016, Capt. Kasey came by Ms. Crocker's office and escorted Ms. Crocker to Bryant's office.

33.     Capt. Kasey remained present for the ensuing meeting between Ms. Crocker and Bryant.

34.     Bryant informed Ms. Crocker that she and Defendant McCabe had decided to terminate Ms. Crocker's employment.

35.     Bryant told Ms. Crocker that the decision to terminate her was related to the way Crocker had "mishandled" the "[Lieutenant M] investigation."

36.     Ms. Crocker explained—for the third time—that she had only interviewed the officer during the investigation.

37.     Bryant then gave Ms. Crocker the option to "go quietly" and resign.

38.     Bryant handed Ms. Crocker a formal letter of resignation for her signature.

39.     Upon information and belief, Bryant either personally prepared or directed the preparation of the formal letter of resignation prior to meeting with Ms. Crocker.

40.     Bryant told Ms. Crocker that, if she signed the letter immediately, she would receive pay for her unused annual leave.

41.     Bryant also stated that Ms. Crocker would be placed on administrative leave through November 4, 2016 if she resigned.

42.     Bryant told Ms. Crocker she would not receive a written copy of the charges against her.

43.     As a result, and believing that she had no alternative, Ms. Crocker unwillingly

signed the letter of resignation.

44.     As Ms. Crocker got up to leave the room, Bryant commented that Ms. Crocker

was "nothing but a racist and bigot."

45.     Within 10 minutes of Ms. Crocker leaving the building, Bryant emailed

Defendant McCabe, advising him as follows:

> Hello Sheriff –
>
> Kathy Crocker left the building at about 4:25.  She'll be on administrative leave until 11/4.  She'll get a
> normal paycheck on 11/10 for the pay period 10/24-11/4.  In addition, she'll get paid 146 hours of
> annual leave (3 weeks and 26 days).  CPT Kasey will touch base with Virginia on Monday to make sure
> Virginia is filled in on the particulars of the leave pay-out.  CPT Kasey will also touch base with her folks
> to know they need to resume the duties they were all handling just fine before Kathy Crocker arrived
> here 5 years ago.   She no longer has access to email or the building.  Will call you later –
>
> **Linda L. Bryant**
> **Assistant Superintendent/In-House Counsel**
> **2690 Elmhurst Lane**
> **Portsmouth, Virginia 23701**
> **(757) 488-9464**
> █████████████████

A true copy of the email is attached as Exhibit B and made a part hereof.

46.     Upon learning that Ms. Crocker was no longer working at the Jail, Accounting

Manager Virginia Haiderer submitted her voluntary letter of resignation on Monday, October 31,

2016. Later that day, Defendant Bryant met with Ms. Haiderer to discuss her decision to

voluntarily leave her employment at the Jail. Ms. Haiderer indicated that she did not want to be

the next employee "walked out of the building," referring to Ms. Crocker's termination several

days before. Ms. Haiderer also explicitly confronted Bryant regarding her failure to give Ms.

Crocker Due Process. Bryant responded that she felt justified in her decision to terminate Ms.

Crocker's employment because Ms. Crocker had "racial allegations" made against her.

**Plaintiff had a Reasonable Expectation in Continued Employment
Sufficient to Give her a Property Interest in her Employment.
As Such, She had the Right to Due Process.**

47.     At the time of her hire, on August 8, 2011, Plaintiff signed a Receipt and
Acknowledgement Form, confirming that she had received a copy of the Jail's Employee
Handbook. This form also confirmed that Plaintiff was required to comply with the policies in
the handbook, as well as "other policies and practices otherwise adopted by the Jail."

48.     Page 1 of the Employee Handbook states, "employment is always at-will and may
be terminated by either the Authority or the employee at any time for any reason, with or without
cause and with or without notice."

49.     However, the Handbook proceeds to describe the twelve month "introductory
period" that is applicable to all employees of the Jail (p. 5). The Handbook specifically states,
"An employee terminated from employment during the introductory period shall have no appeal
or grievance rights against such termination." (p. 5, *accord* p. 22) It further provides that
"Employees may be dismissed during the Introductory Period for any of the reasons stated" in
Policy Number 2.30 (p. 22).

50.     Section 2.21 of the Jail's "Policies and Procedures" describes the Employee
Grievance Procedure available to all employees who are not in their introductory period. The
Grievance Procedure provides detailed notice requirements and four levels of appeal,
culminating in a Panel Hearing. At this stage of the procedure, the grievant has the opportunity to
call and question witnesses, present additional evidence, and cross examine witnesses.

51.     Furthermore, both the Handbook (p. 19) and Policy Section 2.21 (subsection
IV(A)(1)) specifically provide that disciplinary actions involving dismissals are grievable.

52.     The Handbook requires that, "Prior to taking disciplinary action based on the standards of conduct, each employee must be given oral or written notice of the offenses and an opportunity to respond to the supervisor proposing the disciplinary action, with the exception of a positive drug/alcohol test or refusal to participate in the test, in which instance the employee may be dismissed from employment immediately" (p. 19).

53.     Finally, in its Policies and Procedures Number 2.8, the Jail specifically states that all employees on "permanent status" are terminated or demoted only for just causes, as follows:

> The Hampton Roads Regional Jail shall maintain a policy to keep employees and management equally aware of each employee's responsibility of maintaining a positive and productive work environment. The intention of this policy is to clarify the Regional Jail's position concerning standards of conduct, appropriate corrective action, and progressive discipline. All employees on permanent status are terminated or demoted only for just causes and after grievance and appeals procedures, if applicable have been exhausted. This is to be accomplished by way of:
>
> • Establishing a uniform set of guidelines of conduct that are fair and objective;
>
> • Establishing a uniform set of guidelines for correcting and treating unacceptable conduct;
>
> • Distinguishing between less serious and more serious actions of misconduct; and
>
> • Providing consistent, appropriate corrective action.

54.     In addition to these provisions, the Jail had a practice or custom of affording all its permanent employees procedural due process in the form of notice of the charges against them and an opportunity to respond prior to termination. This practice was in effect for all permanent employees during the five years that Plaintiff worked at the Jail.

### COUNT I: DEPRIVATION OF PROPERTY INTEREST IN VIOLATION OF THE DUE PROCESS CLAUSE OF THE FOURTEENTH AMENDMENT AND 42 U.S.C. § 1983

55.     Ms. Crocker incorporates by reference all preceding paragraphs of the Complaint as if fully set forth herein.

56. Under the Fourteenth Amendment of the federal Constitution, employees who have a reasonable expectation of continued employment enjoy a property interest in their continued employment such that they can only be terminated for "good cause" without impinging their right to due process.

57. The allegations in paragraphs 47-54 demonstrate that Plaintiff had an expectation to continued employment sufficient to create a property interest in that right. Consequently, Plaintiff had the right to Due Process in any proceedings relating to her termination.

58. According to the Due Process Clause of the Fourteenth Amendment, this property interest can only be taken away from a public employee upon notice of the charges against her, an explanation of the employer's evidence, and the opportunity to respond to the charges. At such a hearing, the employer bears the burden of proof, and the employee has the right to counsel and to confront and cross-examine any witnesses against her.

59. This Due Process right to notice and a hearing can be waived, but such waiver must be voluntarily made.

60. 42 U.S.C. § 1983 provides a civil cause of action for every person who is deprived of any rights, privileges, or immunities secured by the Constitution of the United States when such deprivation is made by any person acting under color of law.[1] Municipal liability can only be established under 42 U.S.C. § 1983 when "execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury." *Monell v. Dep't of Soc. Servs. of N.Y.*, 436 U.S. 658,

---

[1] 42 U.S.C. provides, in pertinent part, "Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress..."

694 (1978). Such unconstitutional policy or custom may arise, among other ways, through the decisions of a person with final policymaking authority, through an omission (such as failure to train) that "manifest[s] deliberate indifference to the rights of citizens", or through a practice so "persistent and widespread" that it constitutes a "custom or usage with the force of law." *Lytle v. Doyle*, 326 F.3d 463, 471 (4th Cir. 2003), *quoting Carter v. Morris*, 164 F.3d 215, 217 (4th Cir. 1999).

61.     As Interim Superintendent of the Jail, Defendant McCabe assumed all the responsibilities of the Superintendent. According to Jail Policies and Procedures, the Superintendent retained final policymaking authority with regard to all personnel matters.

62.     Upon information and belief, and as evidenced in the emails contained herein, Defendant McCabe delegated his authority with regard to personnel matters to Defendant Bryant. Acting under color of state law, Defendant Bryant violated Ms. Crocker's constitutional right to Due Process by coercing Ms. Crocker to resign.

63.     Arguing in the alternative, Defendant McCabe failed to train Bryant in the appropriate manner to deal with personnel matters, such as termination of Jail employees.

64.     Arguing in the alternative, Defendant Bryant's practice of terminating the employment of various Jail employees without affording them their constitutionally protected rights was so persistent and widespread that it constituted a custom within the Jail, with the force of law.

65.     Ms. Crocker's resignation was not voluntary because:

  (a) she was not given a reasonable amount of time within which to make her decision, as she was required to decide during the brief, impromptu meeting;

  (b) she was not given any real alternative to resignation;

(c) she was not permitted to select the effective date of her resignation;

(d) she was not permitted to confer with counsel or any other person regarding the decision put before her; and, importantly,

(e) she did not receive notice of the charges or evidence against her.

Consequently, Ms. Crocker's resignation was coerced and involuntary, made under duress, and the manner in which it was obtained violated her right to Due Process.

66.   Defendant Bryant's conduct in terminating Ms. Crocker's employment was reckless and demonstrates callous indifference to Ms. Crocker's federally-protected rights. This is particularly true because of Defendant Bryant's special knowledge as an attorney: She was undoubtedly aware of the process Ms. Crocker was due, and consciously disregarded her knowledge of Ms. Crocker's rights.

67.   As evidenced by Bryant's emails to McCabe immediately after she counseled Ms. Crocker and terminated her employment, McCabe had knowledge of the course of action Bryant was planning to take with respect to Ms. Crocker, and he failed to act to prevent future harm. Consequently, because Bryant was acting within the course and scope of her employment, and within the policy-making authority McCabe had delegated to her, both McCabe and HRRJA are liable for Defendant Bryant's actions.

68.   As a direct and proximate result of Defendants' violation of her Constitutional rights, Ms. Crocker has suffered lost wages; anxiety; loss of confidence; humiliation and embarrassment; and emotional distress, pain, suffering, mental anguish and other non-pecuniary losses.

<u>**PRAYER FOR RELIEF**</u>

**WHEREFORE**, Ms. Crocker demands that judgment be entered in her favor against Defendants, and that in addition this Court:

(a)    Award Ms. Crocker compensatory damages for Defendants' deprivation of her property interest in continued employment, in violation of her Due Process rights, in an amount to be determined at trial;

(b)    Award Ms. Crocker punitive damages against Defendant Bryant for her reckless and callous indifference to Ms. Crocker's federally-protected right to continued employment, and her deprivation of that interest in violation of her Due Process rights, in in an amount to be determined at trial;

(c)    Award Ms. Crocker back-pay, including benefits, and interest thereon at the prevailing rate;

(d)    Award Ms. Crocker reinstatement to her former position;

(e)    Issue injunctive relief against Defendants Bryant and HRRJA Authority, ordering Ms. Bryant to refrain from violating the Constitutional rights of other Jail employees;

(f)    Award Ms. Crocker's attorney's fees and costs of this action; and

(g)    Award Ms. Crocker such other and further relief as may be appropriate under the circumstances.

JURY TRIAL DEMANDED.

Respectfully submitted,

**KATHRYN CROCKER**

By: _____
   Of Counsel

Reid H. Ervin, Esq. (VSB 01197)
rervin@ervinjewett.com
Joshua L. Jewett, Esq. (VSB 76884)
jjewett@ervinjewett.com
Brittany M. Wrigley, Esq. (VSB 89696)
bwrigley@ervinjewett.com
ERVIN JEWETT, P.C.
2400 Dominion Tower
999 Waterside Drive
Norfolk, Virginia 23510
P:  (757) 624-9323
F:  (757) 624-8414

*Counsel for Plaintiff*

# Exhibit A

**Bryant, Linda L.**

| | |
|---|---|
| **From:** | Bryant, Linda L. |
| **Sent:** | Thursday, October 20, 2016 7:36 PM |
| **To:** | McCabe, Robert J. |
| **Subject:** | crocker |

Counseling with Crocker done.  Will write it up tomorrow.

Linda L. Bryant
Assistant Superintendent/In-House Counsel
2690 Elmhurst Lane
Portsmouth, Virginia 23701

# Exhibit B

## Bryant, Linda L.

| | |
|---|---|
| **From:** | McCabe, Robert J. |
| **Sent:** | Friday, October 28, 2016 4:36 PM |
| **To:** | Bryant, Linda L. |
| **Subject:** | Re: Kathy Crocker |

Received

Robert J. McCabe
Sheriff/High Constable
City of Norfolk, Virginia

Voted "Best Places to Work in Hampton Roads"
Certified V3 Program - Virginia Values Veterans

On Oct 28, 2016, at 4:35 PM, Bryant, Linda L.                    wrote:

> Hello Sheriff –
>
> Kathy Crocker left the building at about 4:25.  She'll be on administrative leave until 11/4.  She'll get a
> normal paycheck on 11/10 for the pay period 10/24-11/4.  In addition, she'll get paid 146 hours of
> annual leave (3 weeks and 26 days).  CPT Kasey will touch base with Virginia on Monday to make sure
> Virginia is filled in on the particulars of the leave pay-out.  CPT Kasey will also touch base with her folks
> to know they need to resume the duties they were all handling just fine before Kathy Crocker arrived
> here 5 years ago.   She no longer has access to email or the building.  Will call you later –
>
> **Linda L. Bryant**
> **Assistant Superintendent/In-House Counsel**
> **2690 Elmhurst Lane**
> **Portsmouth, Virginia 23701**
>
>
> <Letter of Resignation Crocker.pdf>
> <Acceptance fo Resignation Crocker.pdf>
> <2016 10 28--Krocker Termination Notes--v2 (002).doc>